Case: 1:22-mj-00046
Assigned To : Faruqui, Zia M.
Assign. Date : 3/1/2022
Description: Complaint with Arrest Warrant

**STATEMENT OF FACTS**

Your affiant, TerryAnn Burns is a Special Agent assigned to the Joint Terrorism Task Force (JTTF) in the FBI Baltimore Division. In my duties as a Special Agent, I am currently assigned to investigating, managing and supporting domestic terrorism investigations which often involve violations of Title 18 of the United States Code. I have assisted in the preparation of search warrant applications, conducted or participated in physical and electronic surveillance, assisted in the execution of search warrants, debriefed informants and reviewed other pertinent records. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice

President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On or about January 15, 2021, the FBI created a U.S. Capitol Violence website seeking the public's assistance in identifying individuals who made unlawful entry into the U.S Capitol building and committed various other alleged criminal violation.

On May 26, 2021 the FBI posted a BOLO for unsub #384-Assault on a Federal Officer (AFO).  The photographs accompanying that BOLO are shown below in Figures 1-6.



Figure 1  Figure 2  Figure 3

Figure 4  Figure 5  Figure 6

On June 1, 2021, the FBI compared the BOLO photos to the Maryland MVA photo of Narayana C. Rheiner and found the images to be consistent.

On June 7, 2021, the FBI received an electronic tip from a non-anonymous citizen who stated that they "stumbled upon a YouTube video" with an individual identifying as Ryan from Baltimore who has a "very, very close physical match" to BOLO #384-AFO.

On or about August 30, 2021, the FBI reviewed U.S. Capitol CCTV footage which revealed an individual with the same physical appearance, hair, and beard as BOLO #384-AFO AFO.  The person, who was seen wearing a dark jacket and red hat with the brim turned backward, entered the U.S. Capitol, through the Upper West entrance unlawfully at approximately 2:44 p.m.



*Figure 8*

Subsequently, on October 27, 2021, the FBI showed still framed pictures of the person depicted in U.S Capitol CCTV footage and Metropolitan Police Department body worn camera footage to an individual with close personal and professional contact with Rheiner (Witness 1). Witness 1 positively identified RHEINER in the photographs, which are set forth as Figures 9-11.

  

*Figure 9*                    *Figure 10*                    *Figure 11*

The FBI reviewed body worn camera footage of Metropolitan Police Department Officers who were present at the Capitol on January 6, 2021.  RHEINER was observed at the front of a police line waving others to come forward toward the police line as he and others said to "push up" on the line. RHEINER then made contact with officers with his left arm and then grabbed an officer's riot shield and attempt to pull it away from the officer.



*Figure 12*



*Figure 13*



*Figure 14*

Body worn camera footage from officers inside the Capitol shows RHEINER inside the U.S. Capitol, telling officers to "stand down and go home."



*Figure 15*

On September 22, 2021, the FBI conducted an interview with MPD Officer John Graziano, who stated that he remembers the individual in Figure 16 as someone who was trying to hurt officers and trying to get past the police line which was formed on the U.S Capitol steps.



*Figure 16*

Based on the foregoing, your affiant submits that there is probable cause to believe that Narayana C. RHEINER violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such

proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;: (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that Narayana C. RHEINER violated 40 U.S.C. § 5104(e)(2)(G) which makes it a crime to willfully and knowingly (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Finally, your affiant submits there is probable cause to believe that Narayana C. RHEINER violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

_____
TerryAnn Burns
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this <u>2</u> day of <u>March</u> 2022.

_____
HONRABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE