**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CRIM NO. 22-CR-108** |
| **NARAYANA RHEINER,** | ) | |
| | ) | **Judge: Friedrich** |
| | ) | |
| **Defendant.** | ) | **Sentencing Date: July 5, 2023** |

**DEFENDANT NARAYANA RHEINER'S
MEMORANDUM IN AID OF SENTENCING**

COMES NOW Narayana Rheiner, by and through counsel, and submits

the following memorandum in aid of sentencing.

**Background**

On January 6, 2021, a joint session of Congress convened at the U.S.

Capitol. The purpose for the joint session was to certify the vote count of the

electoral college of the 2020 presidential election. At the time, then-President

Donald Trump held a "Stop the Steal" rally, which encouraged participants to

protest the certification of the 2020 election. During the rally, President Trump

encouraged the individuals to go to the U.S. Capitol to protest.

At approximately 2:00 p.m., some of the individuals who were at the "Stop

the Steal" rally descended upon the U.S. Capitol. They forced their way through

the barricades and police officers and continued their protesting. Some of the

protesters became violent - many of whom broke windows and doors and eventually entered the U.S. Capitol.

Defendant Narayana Rheiner was one of the individuals at the "Stop the Steal" rally and at the protests at the U.S. Capitol. That day, Mr. Rheiner traveled from the Baltimore area to Washington, D.C., to attend the rally. After the rally was over, Mr. Rheiner walked with other protestors from the rally to the U.S. Capitol. Mr. Rheiner arrived at the Upper West Plaza at approximately 2:00 p.m. At approximately 2:04 p.m., Mr. Rheiner was one of the individuals moved his way up to the front where police officers had formed a line to stop the protesters. Mr. Rheiner pushed up against the line of officers and grabbed one officer's riot shield. Mr. Rheiner eventually pulled  the shield out of the officer's hands, causing the officer to slip to the ground. Based upon the video provided in this matter, it appears the officer stood up and returned to his role while not suffering any apparent injury.

At approximately 2:44 p.m., Mr. Rheiner, along with others, entered the U.S. Capitol building though a door on the Upper West Terrace and entered the Rotunda. About six minutes later, Mr. Rheiner and others attempted to enter a hallway within the U.S. Capitol, but it was blocked by police. The police officers sprayed chemical irritants on those individuals, including Mr. Rheiner. Mr. Rheiner responded by stating,  "You know how many times I've been sprayed today? That shit ain't

nothing!" and "Why don't you just go home!"  Mr. Rheiner left the U.S. Capitol at approximately 2:57 p.m. and then left to return to Baltimore without any further incident.

On March 31, 2022, a grand jury in the District of Columbia returned a five-count Indictment charging defendant with Narayana Rheiner with the following five counts: 1) Civil Disorder, in violation of 18 USC § 231(a)(3); 2) Entering and Remaining on Restricted Building or Grounds, in violation of 18 USC § 1752(a)(1); 3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 USC § 1752(a)(2); 4) Disorderly Conduct in a Capitol Building, in violation of 40 USC § 5104(e)(2)(D); and 5) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC § 5104(e)(2)(G). He was arrested on March 2, 2022, and was released with pretrial conditions on March 3, 2022. While on release, on September 18, 2022, Mr. Rheiner was picked up on a bench warrant for a prior Maryland matter, where he remained detained at the Ordinance Road Correctional Center until his recent release.

On November 4, 2022, while still at the Ordinance Road Correctional Facility, Mr. Rheiner pled guilty, pursuant to Rule 11(c)(1)(B), to Count One of the Indictment, Civil Disorder, in violation of 18 USC § 231(a)(3). The offense carries a maximum sentence of five years of imprisonment pursuant to 18 USC § 231(a)(3); a term of supervised release of not more than three years, pursuant to18 USC § 3583(b)(3); and

a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18

USC § 3571(b)(3). In addition, the charge carries a special assessment of $100.

## ARGUMENT

### A.   Statutory Penalty

The penalty for Civil Disorder, in violation of 18 USC § 231(a)(3), carries a

maximum sentence of five years of imprisonment, a term of supervised release of not

more than three years, a fine of $250,000 or twice the pecuniary gain or loss of the

offense, and  a special assessment of $100.

### B.   Sentencing Guideline Calculations

On October 7, 2022, the probation office filed its final Presentence Report

(PSR) in this case. (Dkt. No. 31). In that report, the Criminal History Score was

determined to be 7, thus placing Mr. Rheiner in Criminal History Category IV. *Id.*at

¶ 48. As to the offense level, the PSR report writer began with a base offense level of

10. *Id.* at ¶ 26. Three points were added due to physical contact with the officer. *Id.* at

¶ 27. However, two points were removed for his acceptance of responsibility. *Id.* at ¶

33.

Accordingly, the PSR determined that Mr. Rheiner' Total Offense Level was

a total of 11. *Id.* at ¶ 34. Thus, with the Criminal History of IV and a Total Offense

Level of 11, the PSR came to a sentencing range of 18 to 24 months. *Id.* at ¶ 87.

This places Mr. Rheiner in Zone D of the Sentencing Table. In addition, pursuant to the plea agreement, Mr. Rheiner has agreed to pay restitution in the amount of $2,000. *Id.* at ¶ 10.

With regard to the calculation, Mr. Rheiner objects to his criminal history calculation for two reasons. First, the PSR writer scored 1 point for a probation before judgment conviction from Maryland, when Defendant asserts that it should have been 0 points. Second, the score of the Attempted 2nd degree burglary conviction in ¶ 45 should be scored as only 2 points, not 3 points. In the preliminary PSR, the two items were both scored as Defendant Rheiner presently requests; however, those scores were both increased without sufficient explanation. However, Mr. Rheiner presents the following arguments, which, if either is accepted by the court, would lower Mr. Rheiner's criminal history score to 6 and would put him back at Criminal History Level III, and a range of 8 to 14 months, which the defense believes is the correct range.

First, in Paragraph 44, Mr. Rheiner was scored with one point for Possession of Controlled Substance that was not marijuana, in which he pled not guilty pursuant to a probation before judgment. USSG §4A1.2(a) states:

> PRIOR SENTENCE (1) The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

The probation before judgment in Maryland is codified in the Maryland code as § 6-220(b), which states:

> (b)  In general.-
>
> (1) When a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may stay the entering of judgment, defer further proceedings, and place the defendant on probation subject to reasonable conditions if:
>
> (i) the court finds that the best interests of the defendant and the public welfare would be served; and
>
> (ii) the defendant gives written consent after determination of guilt or acceptance of a nolo contendere plea.

As the court can see, in a probation before judgment, the court "stay[s] the entering of judgment." Accordingly, there is no "adjudication of guilt" that is required for a sentence to be imposed. Since there is no adjudication of guilt, Mr. Rheiner's score should be 0 and not 1. Therefore, his criminal history total would be 6 and place him in Criminal History Category III.

The second objection is from the calculation of Mr. Rheiner's Attempted 2nd degree burglary conviction in ¶ 45. It was originally scored in the preliminary PSR as two points but is now scored as three points. Presumably, it is due to the fact that Mr. Rheiner was eventually required to serve additional time after his plea to this charge, as he had to serve an additional 263 days incarceration. USSG § 4A1.1 states as follows:

**Criminal History Category**  The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

Presumably, Mr. Rheiner was scored with three points in the final PSR based upon the fact that his conviction ended up being over a year and one month when his original sentence, where he had served only 321 days, was augmented by an additional 263 days on June 5, 2023. Thus, this addition of time eventually made Mr. Rheiner's amount of incarceration, when combining the time before and after his plea, to over a year and a month. However, at the time of entering his plea, Mr. Rheiner's sentence was less than a year and a month, being only 321 days or just under eleven months. Accordingly, the additional time he served after his plea should not be counted, and therefore, since that amount of time (and Mr. Rheiner's sentence at the time of his plea, is less than a year and a month. Accordingly, it should properly be scored as 2 points, as originally scored, and not 3 points. This would make Mr. Rheiner's criminal history points at 6, which would place him in Category III.

### C.    Statutory Sentencing Factors

As this court knows, in United States v. Booker, 543 U.S. 220, 264 (2005), the Supreme Court indicated that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." Booker further indicated that the purpose of the guidelines was to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" Booker, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)).

Given the factors under 18 U.S.C. § 3553(a), this court should consider the following: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need for the sentence to avoid unwarranted disparities among defendants with similar records convicted of similar conduct. See 18 U.S.C. § 3553(a).

### 1.    Nature and Circumstances of the Offenses

Mr. Rheiner pled guilty to Civil Disorder. Mr. Rheiner's purpose for going to the U.S. Capitol was not one to disrupt the electoral that was occurring inside. Instead, he was there to protest and show his support of then-President

Trump. While he did make some physical contact with an officer by grabbing a riot shield and causing him to fall, the officer was immediately able to stand and did not appear to have received any injury. Indeed, Mr. Rheiner may have suffered more harm than the officer as he was the victim of pepper spray and from law enforcement who were acting to defend the U.S. Cap

### 2. Defendant's History and Characteristics

Mr. Rheiner is a 42 -year-old male. In his own words, as he explained to the PSR writer, Mr. Reiner had a very "complicated" childhood. His parents were members of The International Society for Krishna Consciousness (ISKCON). He had a traumatic childhood, where he as a child was living in an ISKCON commune and was kept and fed through caged bars. He would sometimes go a week without being provided food. He was separated from his parents and was not allowed to interact with other children. He remained at this location until the age of eight, when the ISKCON community that he lived at was closed due to multiple crimes, including corruption, murders, child labor violations, and human trafficking. He was then sent to live with his maternal grandmother because his mother was unable to take care of him due to health issues. His father, however, remained with the ISHKON community and died when Mr. Rheiner was 16 years old. Mr. Rheiner had sporadic contact with his father.  He lived with his grandmother until he turned

18 years old.

Mr. Rheiner has been married twice and does not have  any children. He is separated from his second wife due to irreconcilable differences in 2017,  but the divorce has not been finalized. His arrest in this matter led to Mr. Rheiner having been evicted and losing his job.

Mr. Rheiner has chosen to write a letter for sentencing purposes, which is attached  to this memorandum as Exhibit A and incorporated herein. In this letter, Mr. Rheiner expresses his remorse for his actions. He explains that he was there to support Donald Trump due to his political stance on child trafficking, which he felt strongly about based upon his childhood experiences growing up in ISKCON. While he was there, he had an episode of PTSD that had developed due to his past traumatic life experiences. His physical actions were in response to having been sprayed with a chemical agent by police officers. As he admitted at the time of the plea, he grabbed a riot shield held by one of the officers and it caused the officer to fall, and then he retreated. Mr. Rheiner goes into detail about his ongoing drug issues and how he is currently trying to deal with them. He explains the snowball effect that this arrest had caused, which sadly caused him to eventually start using drugs again.  However, he remains committed to wanting to better himself and enter into a drug program. He respectfully requests that the court take his time at the Ordinance Road Correctional Center into consideration when determining his sentence and would ask that he be

required to complete the  drug program in which he is currently intending to enroll into on July 6th in lieu of jail time.

In support of his request, attached as Exhibit B is a letter from the  Road to Recovery North Clinic of Anne Arundel County in Anne Arundel County, Maryland. As stated in the letter, Mr. Rheiner  is currently in a daily methadone program under the supervision of a doctor, with monthly meetings with a counselor as well as random urine surveillance. Mr. Rheiner was supposed to have entered into an inpatient treatment program directly from his release from the Ordinance Road Correctional Center. However, he wanted to wait for this Honorable Court to sentence him, so he delayed his entrance until after his sentencing.

Mr. Rheiner has also made considerable progress in his personal growth while he was detained. He has earned  multiple certificates, which includes having completed  the Healing Group,  Changing Dysfunctional Thinking Patterns,  the Men's Stepping Up Class, and the Success Through Education Program, and an Advanced Life Skills program through Anne Arundel Community College. These certificates are included as Exhibit C and incorporated herein. Furthermore,  Mr. Rheiner has been working on computer skills, and  attached as Exhibit D are Mr. Rheiner's IC3 certification for Digital Literacy, as well as a  transcript of multiple computer classes that Mr. Rheiner has completed,

Mr. Rheiner has his GED, and he is hoping to further develop his computer skills. He is hoping to continue his studies in the field of aerospace engineering. He is committed to working on his sobriety as well as continuing his education. He hopes that the court can provide him with support in both these areas, particularly with his commitment to dealing with his drug problem.

### 3. Need to Promote Respect for the Law, to Provide Just Punishment, toAfford Adequate Deterrence, and to Protect the Public

Despite the fact that he was on pretrial release in this matter, Mr. Rheiner was detained and out of the community for over 7 months at the Ordinance Road Correctional Center. As described previously, Mr. Rheiner has been working to improve himself to no longer be a danger to the public.

. Rheiner has no intention of duplicating his illegal conduct in any way. His actions were rash and caused by his PTSD as well as his use of controlled substances at that time. As the court can see from his letter, he is very remorseful for his actions and is trying to rebuild and improve his life. Accordingly, the public will be safe from any acts on his part, as he has nointention of repeating any actions of this kind. Mr. Rheiner is amenable to receiving treatment to deal with his addiction and wants inpatient treatment. He is hoping that this court will allow him to enter the Road to Recovery, in which he has already been accepted.

### 4.     Need to Avoid Unwarranted Sentencing Disparities

Mr. Rheiner would request a sentence that is compliant with the sentencing guidelines as argued by this memorandum, which would put him with Criminal History III and in a range of 8-14 months. Sentencing within the guidelines would avoid unwarranted sentencing disparities. This sentence would also place him in Zone B, which would allow a sentence under USSG § 5C1.1 which allows "a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e)." In that vein, Mr. Rheiner would ask that the court allow him to enter the Road to Recovery program and any intermittent confinement the court deems fit.

Finally, should the court choose to give Mr. Rheiner a sentence that includes imprisonment, he would respectfully request that he be able to serve his time close to or in Maryland, and that he be permitted to self-report at a later date.

WHEREFORE, for the reasons stated above, Defendant Narayana Rheiner respectfully requests a sentence as discussed above.

Respectfully submitted,


NARAYANA RHEINER
By Counsel

/s/ John L. Machado
John L. Machado, Esq.
Bar. No. 449961
Counsel for Narayana Rheiner
503 D Street, N.W., Suite 310
Washington, DC 20001
Phone: (703) 989-0840
E-mail: johnlmachado@gmail.com


**Certificate of Service**

I hereby certify that a true copy of the foregoing was electronically filed with
the Clerk of the Court using the CM/ECF system this 3rd day of July, 2023,
which will send a notification of such filing (NEF) to the following to all
counsel of record.

    /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Narayana Rheiner
 Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
 Telephone (703)989-0840
Email: johnlmachado@gmail.com