# United States District Court
# For The District of Columbia

| | |
|---|---|
| United States of America, | |
| v. | Case No. 22-cr-108 (DLF) |
| Narayana Rheiner, | |
| Defendant. | |

## Motion to Reduce Sentence

Narayana Rheiner, through counsel, respectfully requests that the Court reduce his term of imprisonment from 15 months to 12 months (thereby modifying his projected release date from October 2, 2024, to July 2, 2024), due to a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting so-called "status points." *See* Amend. 821 (Part A), U.S.S.C. (eff. Nov. 1, 2023). The government indicates that it opposes this 3-month reduction.

### Relevant Background

In November 2022, Mr. Rheiner pled guilty to one count of obstructing law enforcement officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3). *See* Plea Ag't (Nov. 4, 2023), ECF No. 40. At the time the government agreed to Mr. Rheiner's guilty plea, it was under the impression that his Guidelines range was 8 to 14 months. *Id.* at 3.

The presentence report, which this Court adopted, concluded that Mr. Rheiner had 5 criminal history points. PSR ¶46. Two additional criminal history points were added as so-called "status points" because he committed the underlying offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *See* U.S.S.G. § 4A1.1(d) (2021); PSR ¶47; *see* Sent'g Hr'g Trans. at 4-5, ECF No. 49

("So it's unfortunate, because given that Mr. Rheiner committed the instant offense while on supervision, he's getting an extra two points. He really was right at the cusp of being in criminal history category III as opposed to IV with seven points."). At total offense level 11 and Criminal History Category IV, his advisory guidelines range was 18 to 24 months of imprisonment. *Id.* ¶87.

Mr. Rheiner requested a variance on the basis of, among other factors, his childhood trauma of living at a Hare Krishna commune in West Virginia where he was "kept and fed through cages"; he "would sometimes go a week without being provided food"; and he "was separated from his parents and was not allowed to interact with other children"; it was later closed "due to multiple crimes, including corruption, murders, child labor violations, and human trafficking." Def. Mem. in Aid of Sent'g at 9, ECF No. 37 (Jul. 3, 2023). The government requested a mid-range sentence of 21 months, which "surprised" the Court "given that the government was willing to plead him out to maximum 14 months." Sent'g Hr'g Trans. at 14 ("That seems pretty tough. It's not like there was some offense that wasn't known to the government that you were surprised by. You knew what it was. You knew what the conduct was. You knew that it was scoring a certain way under the guidelines, and you thought that that was a sufficient sentence for him.").

At sentencing, this Court remarked that "for criminal history category IV, I expected a more substantial record here." *Id.* at 26. The Court found that "everyone in here would agree the drugs are contributing to his actions and that his highly traumatic childhood plays a role in that being the case, that is, that he's struggling with PTSD and other mental health issues that make drugs an attractive way to cope." *Id.* at 30. The Court ultimately varied downwards to

impose a below-range sentence of 15 months.  The Court explained that:

> considering the nature of his earlier offenses, the extent to which he struggles with drug abuse issues, at least in part because of the trauma he's experienced, his recent efforts to really take advantage of the opportunities he's been given in connection with the Maryland offense after his revocation in that case and his -- you know, his efforts to get employment and housing so quickly, the Court will vary a very modest amount from -- basically from the criminal history category of IV to  III, which is 12 to 18 months . . . -- the Court's not going to impose a 12-month sentence. It's going to impose a 15-month sentence.

*Id.* at 32-33; *see also* Judgment (Aug. 24, 2023), ECF No. 42; Statement of Reasons at 2.  Mr. Rheiner is projected to complete his prison sentence on October 2, 2024.[1]

## Discussion

After Mr. Rheiner's sentencing, the Sentencing Commission extensively researched the status-point enhancement and determined that "status points add little to the overall predicate value associated with criminal history score."  Notice, *Sentencing Guidelines for U.S. Courts*, U.S.S.C., 88 Fed. Reg. 2582540-01, 28273 (May 3, 2023).  Specifically, it found that "status points improve the criminal history score's successful prediction of rearrest for only 15 out of 10,000 offenders"—that is, 0.0015, or 0.15 percent.  U.S. Sent'g Comm'n, *Revising Status Points*, at 18 (2022).[2]  Notably, status points were the *least* predictive of rearrest for those with 5 or more points for prior offenses.  *Id*. at 14.

For these reasons, the Commission amended and retroactively "limit[ed] the overall criminal history impact of status points" through passing Part A of Amendment 821.  *See* U.S.S.G. § 1B1.10, commentary, n.7.  Part A eliminated the old-guidelines' approach of adding

---

[1] *See* Bureau of Prisons, *Inmate locator*, available at https://www.bop.gov/inmateloc/ (reporting an individual's projected release date).

[2] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220628_Status.pdf.

two points whenever a defendant committed an offense while under a criminal-justice sentence; instead, the amendment adds a single status point only for defendants who otherwise have seven or more criminal-history points; those with fewer than seven criminal-history points receive no status points. *See* U.S.S.G. § 4A1.1(e).

With this amendment, this Court is authorized to reduce Mr. Rheiner's sentence under 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) authorizes the Court to reduce a prison sentence imposed "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Commission." *Id.*; *see also* U.S.S.G. § 1B1.10(a)(1). The Commission's applicable policy statement includes one relevant limitation: any reduction cannot go below the low-end of the now-applicable guidelines' range. *Id.* § 1B1.10(b)(2)(A).

Mr. Rheiner is eligible for a sentence reduction given that his original sentencing range (shown below on the left) has been subsequently lowered by the Sentencing Commission (shown below on the right):

|  | **Original Sentence** | **Application of Amendment 821 (Part A)** |
|---|---|---|
| Total offense level: | 11 | 11 |
| Criminal history points: | 5 | 5 |
| Status points: | 2 | 0 |
| Criminal history category: | IV | III |
| Guideline range: | 18-24 months | 12-18 months |
| Sentence: | 15 months | 12 months (proposed) |
| Projected release date: | October 2, 2024 | July 2, 2024 (proposed) |

As shown above, if Part A of Amendment 821 had been in force when Mr. Rheiner was sentenced, his guideline range would have been 12-18 months instead of 18-24 months.

Accordingly, Mr. Rheiner respectfully requests that the Court convert the below-guidelines'

sentence he received under the old guidelines (15 months with a range of 18-24 months) to a low-

end sentence under the now-applicable guidelines (12 months with a range of 12-18 months).

The government opposes this reduction.  However, while this Court had to vary at his

original sentencing to this lower range, today 12 to 18 months *is* Mr. Rheiner's range.  A sentence

at the low end of this range is fully justified by the same reasons that convinced this Court to vary

earlier, as well as Mr. Rheiner's rehabilitation since his imprisonment.  Indeed, but for the

Guidelines' limitation on below-range sentences in this situation, Mr. Rheiner's horrific

childhood trauma would support a sentence below the lowered range today.  *See* ECF No. 37-1

(personal statement describing PTSD and psychological trauma from a child human trafficking

ring fronting as a religious school at which he "was housed in a cage, tortured, and practically

starving while I waited for somebody to take me as a laborer for making Kashmir blankets and

cobalt batteries").[3]  While this Court cannot go below this lower range today, it can reduce Mr.

Rheiner's sentence by 3 months.

---

[3] His despicable childhood experiences are substantiated by a wide variety of sources.  *See* Lindsey Gruson, *Two Krishna Educators Accused of Child Abuse*, NYTimes (Feb. 18, 1987) ("Sources close to the investigation said it had uncovered evidence that child molestation and child abuse were widespread at the school, part of the West Virginia Hare Krishna temple, the largest in the country, and that the death of a dissident who had accused the sect of various crimes might have been part of a wider conspiracy."), available at https://www.nytimes.com/1987/02/18/us/two-krishna-educators-accused-of-child-abuse.html; Karen Compton, *New Vrindaban & The Palace of Gold: Murder and Mysticism in the West Virginia Mountains*, WTRF (Jun. 23, 2023) (describing patriarchal rules where women were forced to leave their children in sect nurseries; multiple murders; and child molestation), available at https://www.wtrf.com/marshall-county/new-vrindaban-the-palace-of-gold-murder-and-mysticism-in-the-west-virginia.

Moreover, this request is supported by Mr. Rheiner's conduct while imprisoned.  This Court ordered both drug treatment and mental health treatment as conditions of his supervision, *see* Sent'g Hr'g Trans. at 32, and while incarcerated Mr. Rheiner has already worked hard to address these issues.  He completed the Nonresidential Drug Treatment Program (NRDAP), *see* Ex. 1, BOP Records at 4, which "utilizes cognitive-behavioral interventions, which have been proven to be effective in the treatment of substance use disorders. The group treatment format used in this program also offers empirically supported benefits from pro-social peer interaction among participants."  *See* BOP, *Directory of National Programs* at 13 (May 18, 2017).[4]  He is currently engaged in the RESOLVE Program, *see* Ex. 1, BOP Records at 5, which is "a Cognitive Behavioral Therapy program designed to address the trauma related mental health needs of inmates." BOP, *First Step Act Program Guide* at 25 (Oct. 2020).[5]  These are in addition to the 13 classes he has taken since October 2023.  *See* Ex. 1, BOP Records at 7.

Mr. Rheiner has worked as an evening watch orderly; has not had a single disciplinary issue; and has participated in the inmate financial responsibility program in order to satisfy his financial obligations.  *Id.* at 4, 6, 8.  The BOP considers him a low security risk, believes that he poses a low risk of recidivism, and awarded him 30 days of FSA time credits for his program participation.  *Id.* at 2, 5.  Mr. Rheiner's post-sentencing rehabilitation, together with his lower guidelines range and those same reasons that supported this Court's variance at the first

---

[4] Available at https://www.bop.gov/inmates/custody_and_care/docs/20170518_BOPNationalProgramCatalog.pdf.

[5] Available at https://www.bop.gov/inmates/fsa/docs/fsa_program_guide_202010.pdf.

sentencing, all provide strong reasons to grant this motion and reduce Mr. Rheiner's sentence by 3 months.

## Conclusion

For the above reasons, Mr. Rheiner respectfully requests that this Court reduce his sentence to 12 months.  A proposed order is attached.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
JOANNA MUNSON PERALES
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004

**Certificate of Service**

I certify that on April 24, 2024, a copy of Defendant's Motion for a Sentence Reduction was served via electronic mail upon:

Jennifer Blackwell
Deputy Chief, Criminal Division
United States Attorney's Office
Jennifer.Blackwell3@usdoj.gov


_____/s/_____
JOANNA MUNSON PERALES
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004